IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DISTRICT

| | |
|---|---|
| FIRST BANK AND TRUST COMPANY OF ILLINOIS, ) ) ) | |
| Plaintiff, ) ) | No. 06 C 3182 |
| v. ) ) | Judge Ronald A. Guzmán |
| AVRAM CIMMERING and CINDY G. CIMMERING, ) ) ) ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

First Bank and Trust Company of Illinois has sued defendants Avram and Cindy Cimmering for their alleged breach of two guaranty agreements. The case is before the Court on plaintiff's Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss defendants' counterclaim for fraudulent inducement. For the reasons set forth below, the motion is granted.

### Background

On March 9, 2004, plaintiff entered into a loan agreement with CGC Wintergreen Apartments, LLC ("Wintergreen") in the amount of $2,700,000.00 ("the loan"). (Compl. ¶¶ 1, 8, 19.) On the same day, defendants signed a guaranty in favor of plaintiff guaranteeing payment of the loan. (*Id.* ¶¶ 8, 19 & Ex. A, Guaranty.)

Wintergreen obtained the loan to purchase an apartment complex in Omaha, Nebraska known as the Wintergreen Apartments (the "Apartments"). (Countercl. ¶¶ 6, 8-10.) The residents of the Apartments were eligible for and received U.S. Department of Housing and Urban Development ("HUD") Housing Assistance Payments ("HAP") by

contract with the Apartments' previous owner. (*Id.* ¶ 6.) Sometime before Wintergreen and defendants executed the loan and guaranty agreements, HUD told plaintiff that the HAP contracts on the Apartments would be cancelled. (*Id.* ¶ 11.) Though plaintiff knew defendants and Wintergreen needed the HAP payments to pay off the loan, it intentionally withheld the cancellation information from them. (*Id.* ¶¶ 12-13.)

Subsequently, Wintergreen defaulted on the loan and, plaintiffs say, defendants defaulted on the guaranty. (*Id.* ¶¶ 13-14; Compl. ¶¶ 24-25.)

## The Legal Standard

On a Rule 12(b)(6) motion to dismiss a counterclaim, the Court accepts as true all well-pleaded factual allegations, drawing all reasonable inferences in defendants' favor. *MB Fin. Bank, N.A. v. Planet Airways, Inc.*, 04 C 0893, 2005 WL 1189597, at *2 n.2 (N.D. Ill. May 4, 2005). No counterclaim will be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *See Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984).

## Discussion

Defendants allege that plaintiff fraudulently induced them to enter into the guaranty by concealing the fact that the HAP contracts had been canceled. Plaintiff says defendants' counterclaim should be dismissed because the guaranty expressly waives plaintiff's obligation to tell defendants about the cancellation. Plaintiff's argument is based on § 3.14 of the guaranty, which provides:

> <u>Waivers by Guarantors</u>. Each of the Guarantors hereby expressly waives each of the following: . . . (ii) any obligation Lender may have to disclose to

2

such Guarantor any facts Lender now or hereafter may know or have reasonably available to it *regarding Borrower or the financial condition of Borrower*, whether or not Lender has a reasonable opportunity to communicate such facts or has reason to believe that any such facts are unknown to such Guarantor or materially increase the risk to such Guarantor beyond the risk such Guarantor intends to assume hereunder; such Guarantor shall be fully responsible for keeping informed of the financial condition of borrower and of all other circumstances bearing on the risk of non-payment or non-performance of the Obligations . . . .

(Compl., Ex. A, Guaranty § 3.14 (emphasis added).)

In plaintiff's view, the cancellation of the HAP contracts is financial information about the borrower, Wintergreen, so any duty it had to tell defendants about it was waived by this provision. Defendants argue that "financial condition of Borrower" should be construed more narrowly. In short, the parties disagree about the meaning of § 3.14, so the Court must interpret it.

Under Illinois law, the first step in contract interpretation is to determine whether the disputed language is ambiguous.[1] *Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1032, 1036 (7th Cir. 1998). Contract language is ambiguous only if it "is reasonably or fairly susceptible to having more than one meaning." *Id.* (quotation omitted). It is not ambiguous, however, simply because the parties disagree about its meaning. *Id.*

The Court agrees with plaintiff that § 3.14 can only be interpreted as a waiver of any duty it had to tell defendants about the cancellation of the HAP contracts. The scope of § 3.14 is exceedingly broad, absolving plaintiff of any obligation to disclose any facts it currently knows, may know in the future, or should know about Wintergreen's financial condition even if plaintiff knows that defendants are ignorant of those facts or the facts make

---

[1] Though the guaranty has an Illinois choice of law provision, (*see* Compl., Ex. A, Guaranty § 5.14), defendants contend that Nebraska law governs. The Court need not decide whether that is true, however, because Nebraska and Illinois adhere to the same contract interpretation principles. *See Keenan Pkg'g Supply, Inc. v. McDermott*, 700 N.W.2d 645, 653-54 (Neb. App. Ct. 2005); *Flora Bank & Trust v. Czyzewski*, 583 N.E.2d 720, 725 (Ill. App. Ct. 1991).

3

the risk to defendants greater than that they intended to assume. (Compl., Ex. A, Guaranty § 3.14.) Of course, the breadth of the waiver is irrelevant unless cancellation of the HAP contracts constitutes information about Wintergreen's financial condition.

Defendants, of course, say that it is not. In their view, the HAP contract information is separate from Wintergreen, and thus, is not "information relating to [its] financial condition." (Defs.' Resp. at 8.)

Defendants seem to equate "facts . . . regarding . . . the financial condition of Borrower" with Wintergreen's then-existing assets and liabilities. But that interpretation is not supported by the rest of the language in § 3.14, which waives plaintiff's duty to disclose "any facts" that it currently has, will have or may have about Wintergreen's financial condition, including facts that materially increase the risk to defendants. (Compl., Ex. A, Guaranty § 3.14.) Moreover, that section explicitly vests defendants with the "responsib[ility] for keeping informed of . . . *all other circumstances bearing on the risk of non-payment or non-performance of the [loan]*." (*Id.* (emphasis added).) That language clearly demonstrates that the parties intended the waiver to apply to any information that did, could or might impact Wintergreen's ability to pay off the loan, information that defendants admit includes cancellation of the HAP contracts. (*See* Countercl. ¶ 6 ("HAP payments were and are necessary for the owners of [the Apartments] to meet all financial and operational obligations of [the Apartments.]"); *id.* ¶ 12 ("First Bank was well aware . . . that without the HAP payments, Wintergreen was not a financially viable project.").)

In short, the guaranty unambiguously waives any obligation plaintiff had to tell defendants about the cancellation of the HAP contracts.[2] Defendants cannot, therefore, hold plaintiff liable for failing to do so.

## Conclusion

For the reasons stated above, plaintiff's motion to dismiss the counterclaim is granted [doc. no. 14] and defendants' counterclaim is dismissed with prejudice.

**SO ORDERED.**  ENTER: 5/25/07

HON. RONALD A. GUZMAN
United States District Judge

---

[2] Given the Court's resolution of this issue, we need not address plaintiff's other arguments.

5