*MHN*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FIRST BANK AND TRUST COMPANY OF ILLINOIS, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 06 C 3182 ) ) Judge Ronald A. Guzmán |
| AVRAM CIMERRING and CINDY CIMERRING, | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

First Bank and Trust Company of Illinois ("First Bank") has sued Avram and Cindy Cimerring for their alleged breach of their guaranties of two loans First Bank made to them or entities related to them. The case is before the Court on First Bank's Federal Rule of Civil Procedure ("Rule") 56(c) motion for summary judgment. For the reasons set forth below, the motion is granted.

### Facts

On March 9, 2004, First Bank loaned CGC Winter Apartments LLC ("CGC Wintergreen") $2,700,000.00 pursuant to a loan agreement, a promissory note, a deed of trust and security agreement, and a guaranty signed by Avram and Cindy Cimerring. (Defs.' LR 56.1(b)(3)(B) Stmt. ¶¶ 6, 14, 19-20; *see* Pl.'s LR 56.1(a) Stmt., Ex. 2, Harmon Aff., Ex. A, Wintergreen Loan Agreement; *id.*, Ex. B, Promissory Note; *id.*, Ex. C, Deed of Trust; *id.*, Ex. D, Guaranty.) Among other things, the Wintergreen loan agreement states that an event of default occurs upon "[t]he filing of formal charges by any governmental or quasi-governmental entity, including, without limitation, the issuance of an indictment, under a RICO Related Law against any Borrower Party." (*Id.*, Ex. A, Wintergreen Loan Agreement § 10.1.1.16.) The agreement defines "Borrower Parties" as CGC

Wintergreen and Avram and Cindy Cimerring, and "RICO Related Law" as "the Racketeer Influenced and Corrupt Organizations Act of 1970 or any other federal, state or local law for which forfeiture of assets is a potential penalty." (*Id.* § 1.1.)

On May 13, 2004, First Bank loaned Canoco, Inc., Merfin, Inc., Minora Corp., and CGC Bridgeway Apartments, LLC ("CGC Bridgeway") $8,290,000.00 pursuant to a loan agreement, a secured promissory note, a mortgage on the Bridgeway property, and a guaranty signed by Avram and Cindy Cimerring. (Defs.' LR 56.1(b)(3)(B) Stmt. ¶¶ 26, 35, 40-41; *see* Pl.'s LR 56.1(a) Stmt., Ex. 2, Harmon Aff, Ex. E, Bridgeway Loan Agreement; *id.*, Ex, F, Secured Promissory Note; *id.*, Ex. G, Mortgage; *id.*, Ex. H, Guaranty.) Like the Wintergreen loan agreement, the Bridgeway agreement defines as an event of default "[t]he filing of formal charges by any governmental or quasi-governmental entity, including, without limitation, the issuance of an indictment, under a RICO Related Law against any Borrower Party." (Pl.'s LR 56.1(a) Stmt., Ex. 2, Harmon Aff, Ex. E, Bridgeway Loan Agreement § 10.1.1.18.) The agreement defines "Borrower Parties" as Canoco, Merfin, Minora, CGC Bridgeway and Avram and Cindy Cimerring, and "RICO Related Law" as "the Racketeer Influenced and Corrupt Organizations Act of 1970 or any other federal, state or local law for which forfeiture of assets is a potential penalty." (*Id.* § 1.1.)

On May 13, 2004, First Bank also executed an Omnibus Amendment with CGC Wintergreen in which the parties agreed that the Wintergreen and Bridgeway loans were cross-collateralized and a default under one would constitute a default under the other. (Defs.' LR 56.1(b)(3)(B) Stmt. ¶¶ 47-48; *see* Pl.'s LR 56.1(a) Stmt., Ex. 2, Harmon Aff., Ex. I, Omnibus Amendment.)

On June 7, 2005, Avram Cimerring pleaded guilty in Kentucky state court to eleven counts of theft by deception of over $300.00 and was sentenced to three years' diversion. (*See* Pl.'s LR 56.1(a) Stmt., Ex. 7, Certified Copy of Court Record.)

On July 8, 2005, Canoco, Merfin, Minora, CGC Bridgeway and First Bank executed a First Amendment to the Bridgeway loan agreement, increasing the loan amount by more than $600,000.00, increasing the minimum interest rate, setting a new loan fee schedule and imposing certain other conditions. (*Id.*, Ex. 2, Harmon Aff., Ex. J, First Amendment ¶¶ 1-6.) In that agreement, the borrowers "represent[ed], warrant[ed], and convenant[ed] to and with" First Bank that as of July 8, 2005, "there has not been an Event of Default and there exists no state of facts that, with notice or the passage of time, or both, could ripen into a default on the part of any or all of the Borrowers under any of the Loan Documents." (*Id.* ¶ 9(d).)

On September 9, 2005, First Bank sent notices to CGC Wintergreen, CGC Bridgeway, Canoco, Merfin, Minora, and Avram and Cindy Cimerring that they were in default on the Wintergreen and Bridgeway loans for failing to have paid interest and the tax and insurance escrow due for August and September 2005. (Pl.'s LR 56.1(a) Stmt., Ex. K, Letter from First Bank to CGC Bridgeway, Merfin, Minora, Canoco & the Cimerrings of 9/9/05; *id.*, Ex. L, Letter from First Bank to CGC Wintergreen & the Cimerrings of 9/9/05.) The Cimerrings contend they were not in default as of that date, and thus, have not paid First Bank as it has demanded.

## Discussion

To prevail on a summary judgment motion, "the pleadings, the discovery and disclosure materials on file, and any affidavits [must] show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000).

3

Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

First Bank contends that it is entitled to summary judgment because the undisputed facts establish that a number of events of default have occurred and, despite having made demand for payment on the guaranties, no payment has been made. Defendants say there are genuine issues of fact as to whether any event of default has occurred, and thus, plaintiff's motion must be denied.

The Court agrees with plaintiff. According to the unambiguous, and undisputed, terms of the loan agreements, an event of default occurs when a governmental entity files charges against either defendant under "the Racketeer Influenced and Corrupt Organizations Act of 1970 or any other federal, state or local law for which forfeiture of assets is a potential penalty." (*See* Pl.'s LR 56.1(a) Stmt., Ex. 2, Harmon Aff., Ex. A, Wintergreen Loan Agreement §§ 1.1, 10.1.1.16; *id.* Ex. E, Bridgeway Loan Agreement §§ 1.1, 10.1.1.18.) It is undisputed that on June 7, 2005, Avram was convicted in Kentucky state court of eleven counts of theft by deception of over $300.00. (Pl.'s LR 56.1(a) Stmt., Ex. 7, Certified Copy of Court Record.) Under Kentucky law, that conviction subjects him to forfeiture of his assets. *See* Ky. Rev. Stat. Ann § 514.130 ("Upon the conviction of any person for the violation of any offense in this chapter [, including theft by deception,] all property held in violation of this chapter, and any personal property . . . used in the commission or furtherance of an offense under this chapter . . . shall be forfeited . . . ."); *id.* § 532.032 (directing courts to incorporate victim restitution in sentences for crimes resulting in pecuniary harm); *id.* § 532.160 (empowering courts to issue criminal garnishment orders that apply to a convicted person's earnings, money and personal property to pay for court costs and restitution); *id.* § 532.164 (stating that "[a]ny convicted person owing fines, court costs, restitution, or reimbursement before or after his release from incarceration shall be subject to a lien upon his interest, present or future, in any real property").

Defendants do not dispute Avram's Kentucky convictions, but they say the convictions are not an event of default because theft by deception is not a "RICO Related Law," as defined by the loan documents. Contrary to defendants' belief, a crime need not be predicate act under the federal RICO statute or expose to forfeiture the property on which the loan is based to be "RICO Related" within the meaning of the loan documents. Rather, those documents require that a law have only one feature to be "RICO Related": asset forfeiture as a possible penalty. (*See* Pl.'s LR 56.1(a) Stmt., Ex. 2, Harmon Aff., Ex. A, Wintergreen Loan Agreement §§ 1.1, 10.1.1.16; *id.*, Ex. E, Bridgeway Loan Agreement §§ 1.1, 10.1.1.18.) As discussed above, a conviction under Kentucky's theft by deception statute exposes Avram to asset forfeiture. Avram was, therefore, convicted of "RICO Related" crimes, which the loan documents unambiguously define as an event of default. (*See* Pl.'s LR 56.1(a) Stmt., Ex. 2, Harmon Aff., Ex. A, Wintergreen Loan Agreement §§ 1.1, 10.1.1.16; *id.*, Ex. E, Bridgeway Loan Agreement §§ 1.1, 10.1.1.18.)

Even if the convictions are an event of default, defendants say that default cannot support judgment in this case because First Bank did not specifically raise it in the complaint. The notice pleading standard of Rule 8, however, does not require First Bank to identify the specific facts on which its claims are based. Its allegations that the borrowers defaulted on the loans and defendants failed to honor their guaranties (*see* Compl. ¶¶ 12-15, 23-26) preserve First Bank's right to offer the Kentucky convictions to support its claims.

Alternatively, defendants say First Bank is barred from relying on the conviction default by the doctrine of "mend the hold." Under that doctrine, "a party to a contract cannot, at least after the pleadings are complete, repudiate a position taken in the course of litigation over the contract." *Horwitz-Matthews, Inc. v. City of Chi.*, 78 F.3d 1248, 1251 (7th Cir. 1996). Having sent default

notices premised on defendants' alleged failure to pay interest and escrow for August and September 2005, defendants say First Bank cannot now assert Avram's convictions as a grounds for default.

The Court disagrees. First Bank's position in this litigation – that defendants defaulted on the loans and breached the guaranties – has not changed. Rather, First Bank, presumably, as a result of discovery, has offered additional facts to support its claim that as of September 9, 2005, both loans were in default.[1] Because First Bank has not changed its litigating position, the mend the hold doctrine does not apply.

Finally, defendants say, even if this default might otherwise be raised, First Bank has waived it. "Waiver is either an express or implied voluntary and intentional relinquishment of a known and existing right." *Whalen v. K-Mart Corp.*, 519 N.E.2d 991, 994 (Ill. App. Ct. 1988). Defendants, as "[t]he party claiming implied waiver[,] ha[ve] the burden of proving a clear, unequivocal, and decisive act" by First Bank "manifesting [its] intention to waive [its] rights." *Greene v. Helis*, 625 N.E.2d 162, 166 (Ill. App. Ct. 1993). Whether the facts "are sufficient to constitute waiver is a question of law." *Whalen*, 519 N.E.2d at 994. In defendants' view, First Bank's execution of the First Amendment one month after Avram was convicted in Kentucky establishes its waiver of that default.

That argument might have some force if there were any facts to suggest that First Bank *knew* about Avram's convictions when it agreed to amend the loan. But there is not. Defendants do not say that they told First Bank about the convictions before the First Amendment was executed or offer any facts that suggest the Bank otherwise knew about them. On the contrary, the only evidence in

---

[1] The Court deems defendants to have waived any argument that the loan documents require First Bank to send them a notice of each ground for default before it can file suit on that basis.

6

the record that speaks to First Bank's knowledge is the First Amendment itself, which suggests that First Bank knew nothing about the convictions:

> Each of the Borrowers hereby represents, warrants and covenants to and with Lender that: . . . [a]s of the date hereof, there has not been an Event of Default and there exists no state of facts that, with notice or the passage of time, or both, could ripen into a default on the part of any or all of the Borrowers under any of the Loan Documents.

(Pl.'s 56.1(a) Stmt., Ex. 2, Harmon, Aff., Ex. J, First Amendment ¶ 9(d).) Because defendants have not carried their burden of proving that the loan amendment was "a clear, unequivocal, and decisive . . . manifest[ation] of [First Bank's] intention to waive" the default based on Avram's Kentucky convictions, waiver is not a basis for denying First Bank's motion. *Green*, 625 N.E.2d at 166.

## Conclusion

For the reasons stated above, First Bank's motion for summary judgment [doc. no. 28] is granted. Moreover, because the Court did not rely on it in deciding the summary judgment motion, First Bank's motion in limine to bar Steven Thompson's testimony [doc. no. 32] is stricken as moot. The parties have eleven days from the date of this Memorandum Opinion and order to submit a proposed judgment order that reflects the Court's ruling.

**SO ORDERED.**      **ENTERED:** 4/30/08

RONALD A. GUZMAN
United States District Judge

7